I'm glad to be here. David Olshan from Nevada Fair Housing on behalf of the appellant, Andrea Green. The issue this morning is does the Rooker-Feldman doctrine apply? Rooker-Feldman bars a de facto appeal from a State court judgment. And the problem at this point is we no longer have a State court judgment. On December 13, 2003, the State District Court, acting in its appellate capacity, reversed the Justice Court, thereby doing away with any State court decision. So, in essence, we have a new factual record. I submitted a request for the Court to take judicial notice of that decision that, in effect, moots out the previous arguments that we've made and that we've broken. I don't think we formally ruled on that motion, but clearly a judicial document of that sort is ordinarily something of which we would take judicial notice. Assuming that that makes the Rooker-Feldman problem go away, because we now have no adverse State court judgment from the Justice Court, which might be characterized as we're taking an appeal from it, assuming Rooker-Feldman is gone, is there a Younger v. Harris problem? There is no Younger v. Harris problem. First of all, we don't have a State court decision. The second reason we don't have that. But Younger v. Harris is an ongoing State proceeding, and in certain circumstances the federal court cannot interfere with an ongoing State proceeding. At this point, you also need an important State interest. You don't have an important State interest in this case. This is a simple landlord-tenant case. And what exactly is now going to happen in the Justice Court? What's the nature of the proceeding going forward in the Justice Court? We had a status check on March 30th. The Justice Court seemed to be inclined to stay pending the Ninth Circuit's decision. I have a quick comment, by the way. It would have been nice if somebody had told us about the State court appellate ruling sometime before last week. I agree. Very nice, since we'd have spent a lot of time preparing. I agree. The issue for me, though, was in my mind I was separating the two actions, State court, federal court, and I was going on that sort of track for the whole time until I read realize that you don't give full faith and credit to a decision that's... Even if you hadn't thought about it very hard, I mean, it still would appear that if you have a State court, and that goes on both sides, by the way, if you have a State court ruling that's at the core of a case and it's been overturned, somebody should tell us about it. That's correct. So if the – if you want me to go forward with the arguments that we've briefed? Well, if I might, I'd like to pursue the Unger v. Harris issue a little bit. Just review the betting for me. Precisely what is it that's now going on? Who's asking for what? What's under the defense? I mean, what's going on in the Justice Court now? I can't speak for the Housing Authority. I believe they're going to go forward with the eviction, and in the future, there will probably be an eviction case in State justice court. In federal court, there is – well, in federal court, we're here in front of you today. Well, what was originally? Isn't that what's now in Justice Court? Well, didn't the appellate – isn't the appeals opinion simply overturning the determination that she couldn't raise a defense in what's essentially an unlawful detainer case in Justice Court? That case hasn't gone away, has it? No, it hasn't gone away. Right. It's still pending, and I do believe that we will be in State court on an eviction matter. So what we have is – is there any case law about whether unlawful detainers in general are the kinds of actions as to which Younger v. Harris applies? The opposition, I believe, to their countermotion for summary judgment in federal district court contained the Younger – the Younger argument. There are some cases – here it is. The case that I cited to no important State interest. Simple landlord-tenant dispute does not implicate important State interests. Brooklyn Institute of Arts and Science v. City of New York, 64 F. But procedurally, the district court did not rule on the Younger issue. It was raised and not ruled on. Did not rule on it. That's correct. It hasn't been briefed here. Hasn't been briefed. So our options, if we thought there was a – we wanted to know more about it, would be to either have more briefing or to just send you back to the district court and deal with it there. That's correct. And if I think district court – if federal district court had jurisdiction, I believe we would be entitled to a 60B-5 motion. You have a void State court judgment. It does change the whole nature of the federal district courts. You don't need a 60B-5 judgment. I mean, why don't you just get a reversal on Rooker-Feldman and you go back and you now worry about what else was wrong with the case, if anything? Well, we couldn't do that because – you're right, because the jurisdiction is now with the Ninth Circuit. If it – But once we – if we say Rooker-Feldman is no longer a problem, that's not a proper basis for dismissal. We remand you don't need anything except you're back and away you go. That's correct. Is there any – I guess the core procedural problem for us now, is there any reason why we should deal with a Younger v. Harris problem as opposed to send it back to the district court? I don't think there's any reason. It's not the basis of the federal – the district court's decision. Perhaps a sua sponte, a court can bring up subject matter jurisdiction at any time. However, those matters haven't been briefed. They weren't briefed, but they were raised in district court. They were raised in district court. We probably could have even in the first place have affirmed on that basis if we thought the Rooker was wrong. Well – Because we can affirm a judgment on any ground, and that would have been an alternative ground if it were correct to uphold the judgment. That's true, but I would at least request an opportunity to address that argument. It was addressed in our opposition to their counter motion, and the arguments wouldn't vary significantly. Would you object to having the whole thing sent back? No. No objection. Okay. And I would like to reserve some time. I – I think we have this in hand. All right. Let's hear from the other side, and then if you have further to say, we'll be glad to hear from you. Thank you. And, Mr. Parker, welcome not only to San Francisco, but to the Ninth Circuit Bar. Well, thank you very much. It was done in very short order with the help of Rubin. I assume because I was admitted to U.S. Supreme Court that I was already admitted here. I apologize for any inconvenience you may have caused. There's absolutely no need to apologize. Thank you very much, Your Honor. This is a welcome, not a review. Thank you very much. I called opposing counsel earlier to discuss the mootness of these issues earlier – actually, earlier this week. You didn't send us the papers, either. No, I did not. And I apologize for my office not sending you those papers. I wasn't happy to receive them from the State Court in the first place. Yeah, but it was in December, wasn't it? It was originally in December of 2003, and no further action has taken place in terms of scheduling this matter for trial before the Justice Court. My concern, first, in terms of the application of Rocker Fellman issue is that this court, in two recent cases, or fairly recent cases, 2003 case and the Bianchi case, on page 900 of that decision, you found that the doctrine still applied whether or not all issues had been discussed or resolved by the State Court. And, again, if you look at the worldwide church case, which at footnote three I thought was very persuasive. But here there's no judgment of any kind. How could we be interfering with it? I'm sorry? There's no judgment of any kind. How could we be interfering with it? But there's still State court action going forward because the – I think that might be a Younger v. Harris problem. Well, that also, if you look at your footnote, in that case it says, footnote three says, we support the Second and Fifth Circuit decisions in that the Rocker Fellman applies to State court judgments even though the State court appeals are not final. That's appeals, but here we don't have a judgment. That's fine. We still have a proceeding because the district court, which acts as the appellate form for Justice Court decisions, has decided a matter that will continue with a trial, which means the proceeding is still going forward. There's still an active docket, an active case in our State court system. So I think your footnote is very persuasive. When we go to the – Well, but there's – I'm not sure you read that footnote properly given the context of the rest of our case law. The mere fact that you've got parallel Federal and State litigation does not implicate Rocker Fellman. You need a State court judgment because what Rocker Fellman forbids is a de facto appeal from the State court judgment, and if there's no State court judgment, Rocker Fellman doesn't – doesn't apply. And you had a judgment, but you don't have now. It would be another problem, and I'm – and I guess if I'd like to ask you and Judge Fletcher asked your footnote, do you have any objection to us just sending it back, as opposed to trying for ourselves to sort out the Younger v. Harris issue, for example? Well, certainly I believe that the Younger factors were considered by Judge Mahan at the district court level. It was? Yes. I believe so. It was certainly briefed. We briefed it in our – But he didn't decide it. He didn't use it in his – As far as I could tell, he only decided Rocker Fellman. He didn't decide – he didn't use it in support of his final order. He didn't decide it. But certainly he considered it. Those matters were brought up in our moving papers, and they were argued. Well, I guess the question before you is a simple one. Where do you think the initial Younger v. Harris decision should be made, here or in the district court? Well, I agree it should be made at the district court level. I do agree with that. And – but one thing that I would disagree in terms of what my adversary said, I believe that there's an important State issue here. The application of NRS 233b, which is our administrative act, the application of that to PHAs, which is public housing authorities. I think that is a very important State issue that has to be decided. That certainly is a decision made by our State court judge that there was no application at this point. But that sounds like you then agreed that that is an important issue to be decided by the district court initially. Exactly. So I do agree with that. And we seem to have agreement. We do have some agreement. Thank you very much. We like to have agreement. Anything in response? Well, I'm glad you had a trip to San Francisco. I wish you a pleasant weekend here. If you can do that. If you have to go back for a trial on Monday, well – And next time if there's a key development in a case, please let us know when it happens. Thank you very much. Thank you. We appreciate your admission fee, too. Seven minutes left. The next time I come in front of you, I have to pay this. Well, it's use it or lose it. You've got to use it in the next six months. It's like frequent flyer miles. That is gone. Thank you very much, both of you. The case of Green v. Housing Authority of the City of Las Vegas is now submitted for decision. The next case is Tabacu, if I'm pronouncing that correctly, v. Ashcroft. May it please the Court, Your Honors. My name is Monica Sudbevraj for Petitioner Blairm Tabacu.
judges: T.G. Nelson, W. Fletcher, Berzon